IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

Thomas R. West

Plaintiff

v.

Estebita Motors, et al

Defendants

Civil No. : 3:10-cv-10-01256-JPG

**Jury Trial Demanded**

## Opinion and Order

This court ordered the entry of a default judgment against codefendant Estebita Motors, Inc. and therefore finds that it is partly responsible for the damages suffered by plaintiff Tomas R. West after the vehicle it had sold to him crashed due to a dangerous defect or condition that was present at the time of sale that left him with catastrophic and permanent physical, emotional and patrimonial damages. This is a diversity-based personal injury case and as such Puerto Rico law controls our decision.

## Course of the case

This case was filed March 26, 2010. Service of process to codefendant Estebita Motors, Inc., herein forward called Estebita, was on May 8, 2010. (Docket 1) After an appearance moving for an extension of time to answer filed on the 2nd of June, Estebita's answer to the complaint was filed on June 30, 2010. (Docket 9) That answer contained several

counter claims and plaintiff filed his timely answers to them on July 9, 2010. (Docket 11) Codefendant Servicio Dodge, Chrysler & Jeep filed its answer to the complaint on August 17, 2010. (Docket 15)

The Initial Scheduling Conference was held on November 12, 2010. The parties continued with the discovery in the case and the scheduled pre-trial and trial dates were continued several times in 2011 at the request of counsel due, among other reasons, to developing medical conditions of plaintiff. (Dockets 32, 35, 38 and 40)  As of December 2012 no trial date had been set. A deadline for discovery was set for March 21, 2012. (Docket 46)

On November 15th, 2011, counsel for Estebita filed his first motion to withdraw as counsel in the case. (Docket 39) The court denied the same without prejudice in docket 40 and until new counsel appeared to represent Estebita, who had until December 15, 2011 to do so. Counsel was to renew the request to withdraw after that date.  On November 15th, 2011, the court also ordered the termination of all deadlines and hearings. (Docket 40)

On December 19th, 2011, counsel for Estebita again renewed his request to withdraw as counsel. (Docket 41) The court granted the withdrawal on January 19th, 2012. (Docket 42) At the same time, the court found that Estebita had shown "blatant disregard" of its orders and that in light of its interest in promoting efficiency and compliance, found that the

sanction of entry of default against codefendant was appropriate. On January 20, 2012, the clerk entered the default as to Estebita. (Docket 43) Estebita has failed to file any pleading in response to the entry of default.

On March 7, 2012 plaintiff filed a motion for entry of judgment against Estebita and for a hearing in the case. (Docket 45) In the meanwhile, no counsel appeared on behalf of Estebita. Although the Court could not have made it clearer that new counsel had to appear by the deadline set, no appearance was filed, and the motion for entry of judgment stands unopposed.

On April 3, 2012, the Court granted the motion for judgment against Estebita and ordered plaintiff to submit a propose default judgment by April 13, 2012. (Docket 47) Having done so, the court now enters its judgments against Estebita Motors, Inc., both for the complaint and for its several counterclaims against plaintiff, and finds this codefendant to be responsible for the damages sustained by plaintiff Tomas R. West as a result of the accident suffered in the car it sold to him that resulted in the total loss of the car and in serious and permanent physical, emotional and moral and patrimonial damages for which compensation is sought.

## Default Judgment

"[I]t is clearly established that a district court is afforded great discretion in entering default. *See* 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure Civil 2d* § 2685 (1998)

(the decision to enter default is a decision committed to the "sound judicial discretion" of the judge)." **Suárez Cestero v. Pagan Rosa**, 167 F. Supp. 2d 173, 181 (D PR 2001). Disobedience of a court order may constitute extreme misconduct. **Tower Ventures, Inc. v. City of Westfield**, 296 F.3d 43, 46 (1st Cir. 2002)

"Federal Rules of Civil Procedure 55(b) (2) grants the district judge discretion to decide whether to enter a judgment by default, and empowers him to hold hearings or order such procedures as he deems necessary and proper. **U.S. v. Cabrera-Diaz**, 106 F.Supp.2d 234, 243 (D.P.R. 2000) (citing 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, **Federal Practice and Procedure: Civil 3d** § 2684) (footnotes omitted)." **LATIN AMERICAN MUSIC CO. INC. v. ARCHDIOCESE OF SAN JUAN OF ROMAN CATHOLIC AND APOSTOLIC CHURCH**, CIVIL NOS. 96-2312 (PG), 97-2356 (PG), 97-2875 (PG), 98-1597 (PG), 00-1618 (PG). (D PR 2005) "It is black-letter law that a defendant's default constitutes an admission of all well-pleaded facts in the complaint. **Banco Bilbao Vizcaya Argentaria v. Family Restaurants, Inc.,** 285 F.3d 111, 114 (1st Cir. 2002); **Franco v. Selective Ins. Co.,** 184 F.3d 4, 9 n.3 (1st Cir. 1999) ("[a] party who defaults is taken to have conceded the truth of the factual allegations in the complaint"); **Brockton Savings Bank v. Peat, Marwick, Mitchell & Co.,** 771 F.2d 5 (1st Cir. 1985)("there is no question that, default having been entered, each of [plaintiff's] allegations of fact must be taken as true...."),

4

cert. denied, 475 U.S. 1018 (1986)... The usual rule [is] that judgments entered by default may not give other or more extensive relief than that asked for in the pleadings." See **Davison v. Fernandez,** 264 F.2d 131, 132 (1st Cir. 1959); Fed.R.Civ.P. 54(c) ("a judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment") (citing 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 1258)." **Id.**

"When considering a motion for default judgment, "a court may examine a plaintiff's complaint to determine whether it alleges a cause of action... [and] must assume that all well pleaded factual allegations are true." **Quirindongo Pacheco v. Rolon Morales**, 953 F.2d 15, 16 (1st Cir. 1992). The Court thus culls the relevant facts from plaintiff's complaint." **DON KING PRODUCTIONS, INC. v. LA UNION DE TODOS, ET AL.,** Civ. No. 04-2087 (PG). (D PR 2006)

### Findings of Fact

Taking as true all well plead allegations in the complaint, we can establish the following facts:

1. Plaintiff Tomas R. West is of legal age, single and a resident of the state of New York.

2. Estebita Motors, Inc. is a corporation organized under Puerto Rico laws.

3. Plaintiff was a resident of Caguas, Puerto Rico, in March 2009.

4. On Sunday, March 21, 2009 plaintiff purchased a used 1994 Nissan Sentra XE from Estebita's dealership, located on Road 3, km. 16.1, in Canovanas, Puerto Rico.

5. On that day, no employee or sales person informed plaintiff of any mechanical problems with the steering wheel, tie rod or air bag in the car. He was only informed him of a defective ignition.

6. By so acknowledging the dealership admitted that it had the duty and responsibility to know, and that it should have known and must disclose to plaintiff, problems or dangerous conditions in the used car before its sale.

7. Since it actually undertook the duty to disclose defective and dangerous conditions of the car, it further breached it by failing to disclose to plaintiff the defective air bag and driving or steering mechanisms that caused his accident and his injuries.

8. About a week after the purchase, while driving the vehicle and steering, plaintiff heard a grinding sound, and upon stopping and inspecting the car, he saw that the wheels were not turned to the same side. Nevertheless, upon resuming his driving, the wheels returned to normal. He then continued driving it, and felt a trepidation, or shimmy, for a while.

9. On Monday, April 6, 2009, 17 days after his purchase and while driving the car, the steering wheel began moving back and forth. He drove the car slowly to the shop, located in the Cupey ward of He felt a loss of control of the car, after the incident with the wheels of the week before.

10. Plaintiff drove the car slowly to Servicio Dodge, Chrysler & Jeep, a/k/a Mecanica Jeep, after which he slowly drove the car home, a drive of about 20-25 minutes.

11. Later that same day plaintiff left his home in Caguas and proceeded to drive his 1994 Nissan Sentra XE down Route 1 in the direction of San Juan. While driving towards a bend to the left, steering to straighten the car, the wheels locked to the left and the car started going toward a three feet high concrete median. He tried to steer the car to the right but the car continued to the left, then jerked to the right. Plaintiff tried to steer left and applied the brakes, and the car quickly went left while he lost all control over the car. The vehicle swerved back and forth several times, did a 180 degree turn and hit a car parked on the side of the road which in turn hit other cars.

12. The air bag in the driver's side did not deploy upon impact.

13. Not understanding Spanish, plaintiff called Servicio Dodge, Chrysler & Jeep manager for help in interpreting what emergency medical

7

14. Plaintiff was hospitalized for three weeks and underwent hip reconstruction surgery. His left knee and right hand also suffered permanent damages.

15. The serious injuries to his left hip were aggravated upon impact by the fact that the car did not deploy its air bag, having his body receive the full force of the crash.

16. His recovery from the initial surgery included a three week hospitalization, and later the constant use of a wheelchair, or a cane or walker. He has permanent loss of sensation on his right hand due to his injuries and has many other medical complications, in addition to severe pain and suffering due to the consequences of the accident.

17. Plaintiff relocated back to his home state of New York. He continued to experience pain in his left hip and his hand, and he has lost the ability to perform physical activities requiring lifting or moving heavy objects, run or even walk short distances.

18. As a result of his injuries plaintiff lost any chance he had to pursue a career as fire fighter and was, in fact, rejected in his application to become a court officer due to those injuries.

### Discussion of Applicable Puerto Rico Law

As this is a diversity case, we apply Puerto Rico law to all substantive matters and "we are bound by the teachings of the state's highest court. ***Vázquez-Filippetti v. Banco Popular de PR***, 504 F. 3d 43, 49 (CA1 2007) See also ***Rodríguez v. Señor Frog's de la Isla, Inc.***, 642 F. 3d 28, 36 (CA1 2011).

"Article 1802 of Puerto Rico's Civil Code imposes liability upon a person for an "act or omission" that "causes damages to another through fault or negligence." P.R. LAWS ANN. Tit. 31, § 5141. Thus, in order to prevail in a general tort claim under Puerto Rico law, a party must establish the following elements: "(1) evidence of physical or emotional injury, (2) a negligent or intentional act or omission (the breach of duty element), and (3) a sufficient causal nexus between the injury and defendant's act or omission (in other words, proximate cause)." (internal quotations omitted) ***Jimenez v. DESARROLLADORA DEL NORTE S EN C, SE***, civil no. 08-1928-PG, (D PR 2010) "Article 1057 of the [Puerto Rico] Civil Code defines the terms "fault or negligence" as "the omission of the steps which may be required by the character of the obligation and which may pertain to the circumstances of the persons, time, and place." P.R. LAWS ANN. Tit. 31, § 3021. "In the case of an omission, the defendant must have been under a duty to act..." ***Id.*** See also ***Cruz-Vargas v. RJ Reynolds Tobacco Co.***, 348 F. 3d 271, 276 (CA1 2003)

"Tort liability under Puerto Rico law requires both "`fault,'" Marshall(quoting ***Jimenez v. Pelegrina***, 112 P.R.R. 881, 885, 112 D.P.R. 700

(1982)), and the requisite causal connection between the wrongdoing and the damages sustained, which is just another way of saying proximate cause, see ***Vázquez-Filippetti v. Banco Popular de Puerto Rico***, 504 F.3d 43, 49 (1st Cir.2007). "The proximate-cause concept limits a party's liability for hazards flowing from its negligence to those hazards that could be anticipated by a prudent person. ***Marshall***, 828 F.2d at 847 (quoting ***Pacheco v. Puerto Rico Water Res. Auth.***, 12 P.R. Offic. Trans. 367, 372, 112 D.P.R. 296 (1982) (quoting ***Hernandez v. The Capital***, 81 P.R.R. 998, 1005, 81 D.P.R. 1031 (1960)))." ***Id.***   "Foreseeability holds the key: a person is liable if the consequences of her wrongdoing were immediate and foreseeable, not if they were more remote and unlikely. See, e.g., Irvine (applying Puerto Rico law); ***Malave-Felix v. Volvo Car Corp.***, 946 F.2d 967, 971-72 (1st Cir.1991) (applying Puerto Rico law)." ***Señor Frog's***, supra, at p. 36.

"Breach of duty has, as its name implies, two sub-elements: duty and breach. In most cases, the duty is defined by the general rule that one must act as would a prudent and reasonable person under the circumstances. See ***Ortiz v. Levitt & Sons of P.R., Inc.***, 1 P.R. Offic. Trans. 407, 101 D.P.R. 290 (1973). Foreseeability is a component of the "breach" sub-element because a defendant only breaches his duty if he acted (or failed to act) in a way that a reasonably prudent person would foresee as creating undue risk." ***Vazquez-Filippetti***, supra, at 49.

Plaintiffs bear the burden of establishing the applicable standard of care, and proving that Defendants acted below that minimum standard, and that Defendants' negligence was the proximate cause of Plaintiffs' damages. *Carballo-Rodriguez v. Clark Equipment Co., Inc.,* 147 F. Supp. 2d 66, 72 (D PR 2001) " As is true in most jurisdictions, foreseeability is a central issue in these cases, as it is an element of both breach of duty and proximate cause...The duty of care imposed upon a tortfeasor is anticipating reasonably probable injuries to probable victims." (internal citations omitted) *DESARROLLADORA DEL NORTE S EN C, SE, supra.*

## Analysis

Taking as true all the well pleaded facts from the complaint, we must examine them to determine whether they allege a cause of action. Since this is a case sounding in tort, plaintiff must have established the following elements: (1) evidence of physical or emotional injury, (2) a negligent or intentional act or omission (the breach of duty element), and (3) a sufficient causal nexus between the injury and defendant's act or omission. *Señor Frog's and Vázquez-Filippetti,* supra.

It is clear that plaintiff has set out sufficient facts to show the (1) existence of both physical and emotional injuries. He suffered injuries upon impact at the time of the accident described in the complaint, and has undergone extensive, painful and continuous medical treatment to correct those injuries. He has suffered permanent, life altering damages in

his hand and hip. He has lost employment opportunities due to those injuries, and has suffered pain and changes in his life style, a change in the activities he can enjoy and in his employment possibilities. See Complaint, docket 1, paragraphs 21 through 24.

It is also clear that plaintiff has set out sufficient facts to show (2) a negligent or intentional act or omission (the breach of duty element). Estebita knew it had a duty to disclose mechanical problems in the vehicle before it sold it to plaintiff when it actually notified him that the 1994 Nissan Sentra XE had a defective ignition. See Complaint, Docket 1, Paragraph 9. Estebita then knew or must have known that it had the duty to disclose other dangerous or defective mechanical conditions in the used car before its sale. See Complaint, Docket 1, Paragraphs 10 and 11. Furthermore, it was foreseeable by a reasonable and prudent operator and employees of a used car dealership that if they did not disclose all the defective mechanical conditions of the used 1994 Nissan Sentra XE before its sale it would be creating undue risk for plaintiff upon its purchase. Since it did not disclose the conditions that were present at the time of the sale of the car that caused the accident 17 days later, it breached its duty of care towards plaintiff. Finally, the consequences of Estebita's wrongdoing were immediate and foreseeable and present at the time of the sale of the used car. According to the facts we take as true, the accident occurred only 17 days after the purchase of the car so

12

we must conclude that its mechanical conditions must have existed at the time of the sale to plaintiff, that Estebita failed to disclose them to him and that because of these dangerous conditions he lost control of the car and crashed. Those conditions were therefore the foreseeable and immediate cause of the accident. They were not remote and unlikely due to the temporal proximity between the sale of the car as it was and the crash.

As for (3) a sufficient causal nexus between the injury and defendant's act or omission, the description of how the accident occurred shows sufficient facts to establish that the car, only 17 days after its purchase from Estebita and its delivery to plaintiff, had a defective air bag and a defective steering mechanism, the later of which caused him to loose control of the vehicle and the former to suffer more serious and traumatic injuries than if the air bag had deployed. See Complaint, Docket 1, Paragraphs 17, 18 and 19. Had Estebita warned him of the dangerous steering problems and of a defective air bag, he would have had the opportunity to get them fixed before operating the vehicle.

The facts we take as true show that plaintiff took the car for service to Servicio Dodge, Chrysler & Jeep, allegation that shows reasonable behavior when faced with an unknown mechanical condition in his car. See Complaint, docket 1, paragraphs 13 through 16. The allegations also establish that he slowly drove back home afterwards before driving it and

suffering the tragic accident soon thereafter. Therefore, Plaintiff's intervening actions did not break the sufficiency of the causal nexus between Estebita's breach of the duty to know and to disclose all mechanical defects or conditions and the crash. There are no factual allegations that plaintiff fixed, altered, or modified the serious mechanical defects or problems with the air bag or steering mechanisms that the complaint alleges existed at the time of the sale of the car. Thus the allegations are sufficient to establish that Estebita's actions and omissions contributed to the total loss of control of the car that caused the accident. See Complaint, docket 1, paragraph 14.

The well pleaded facts we take as true suggest that Estebita breached its of duty of care to plaintiff as customer and started the causal chain that led to catastrophic damages to plaintiff. Whether Servicio Dodge, Chrysler & Jeep is jointly responsible for those damages due to their own breach of duty, if any, in the negligent care of the car's dangerous mechanical or defective conditions at the time it was sold by Estebita Motors is to be established separately.

**Plaintiff has met his burden in the case against Estebita Motors**

The foregoing analysis shows plaintiff Tomas R. West has established sufficient facts in the Complaint to define the applicable standard of care and the duty to disclose dangerous or defective conditions in the 1994

Nissan Sentra XE he purchased. Estebita Motors, Inc. acted below that minimum standard so that its negligence was a proximate cause of Plaintiff's accident. Estebita therefore created the conditions for plaintiff's catastrophic accident, his ensuing damages and his life altering, permanent injuries and for that it must now compensate him. He has therefore met his burden of establishing that Estebita is at a minimum partially responsible for the damages alleged in the complaint. Because he has met the standard for responsibility in negligence cases, and has complied with the standards for the issuance of a default judgment, the court ENTERS the default judgment against Estebita Motors, Inc.

### Estebita Motors Inc. counterclaims

Estebita Motors, Inc. filed seven so called "counterclaims" together with its answer to the complaint. (Docket 9, page 5) Since the court entered the default against Estebita, it must also dismiss with prejudice those seven (7) counterclaims against plaintiff, because the well pleaded allegations in the complaint considered as true by the court must also be considered sufficient to support plaintiff's denials of responsibility for the counterclaims found in docket 11. In this scenario, dismissal of the counterclaims is the proper remedy against Estebita. Federal Rules of Civil Procedure 13(i) and 54(b) allow the court to adjudicate these counterclaims against plaintiff because, being that there is no just reason for any delay to end this action as to Estebita, its counterclaims must be

subjected to the same remedy for its "blatant disregard" of this court's orders and so we must apply the same reason for the entry of default to these claims. "By default of the Counter-Claimants, all counterclaims against [plaintiff] have been dismissed". See for example *FORTIS BANK v. M/V SHAMROCK*, No. 04-CV-147-GZS, footnote [1] (D ME 2005). The proper remedy is then dismissal with prejudice of all of Estebita's counterclaims against plaintiff found in Docket 9. Therefore, Court directs and ORDERS the entry of final judgment on the dismissals, on a separate document pursuant to Rule 58.

## Damages requested

In both the Complaint and his Answer to Counterclaims, dockets 1 and 11, plaintiff requested judgment against both codefendants, jointly and severally, the following amounts:

- At least $1,000,000.00 for his physical and emotional pain, suffering and disability caused by the accident due to codefendant's fault or negligence;

- At least $1,000,000.00 for lost past and future income due to their fault or negligence;

- At least $50,000.00 for medical expenses and liabilities incurred in as a result of the accident;

- At least $200,000.00 in future medical expenses, AND

- All reasonable attorney fees and costs incurred in the litigation of the case.

Given that plaintiff requested a jury trial, and that the issue of codefendant Servicio Dodge, Chrysler & Jeep's responsibility is still pending, a jury trial will be set to determine (1) the responsibility, if any, of codefendant Servicio Dodge, Chrysler & Jeep for its intervening acts or omissions before the accident, (2) the percentage responsibility, if any, of each party for the damages, and (3) how much each codefendant must pay plaintiff as damages in the case.

9/18/2012

**IT IS SO ORDERED.**

U.S.D.J.